PD-0016-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 2/19/2015 4:12:19 PM
Accepted 2/20/2015 8:05:59 AM
ABEL ACOSTA
CLERK

NO. PD-0016-15

IN THE FIRST COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS

_____

**RAUL RODRIGUEZ,**
**Appellant**

**v.**

**THE STATE OF TEXAS,**
**Appellee**

_____

On Appeal from the First Court of Appeals
Cause no. 01-12-00688-CR
and the 178th District Court
Harris County, Texas
Cause no. 1348372

_____

**RAUL RODRIGUEZ'S REPLY TO**
**THE STATE'S PETITION FOR DISCRETIONARY REVIEW**

_____

Stradley, Davis & Reynal LLP
Neal Davis
Bill Stradley
Jonathan Landers, of counsel

917 Franklin Street, Suite 600
Houston, Texas 77002
Telephone: (713) 227-4444
Facsimile: (713) 760-7140
Email:Neal@SDRFirm.com

RODRIGUEZ'S ATTORNEYS

FILED IN
COURT OF CRIMINAL APPEALS

February 20, 2015

ABEL ACOSTA, CLERK

## I. Introduction

Unsatisfied with the unanimous opinion of the First Court Appeals in this case, Petitioner requests discretionary review. However, Petitioner fails to sufficiently articulate or "amplify the reasons for granting review" under Texas Rule of Appellate Procedure 66.3. *See* Texas R. App. Pro. 68.4 (explaining the petitioner should "amplify" the reasons for granting review). Rather, Petitioner merely disagrees with the appeals court's decision, which is insufficient to grant discretionary review.

Petitioner's arguments are rife with errors and omissions. For example, Petitioner fails to explain that it was *the State* that specifically requested the patently incorrect jury instruction limiting Rodriguez's ability to invoke self-defense. Petitioner fails to mention that the State waited until *after* Rodriguez was convicted and appealed *before* the State argued he was precluded from self-defense. If anyone was at fault for "sandbagging," to use Petitioner's term, it was the State when *the State* submitted a clearly erroneous instruction limiting self-defense, *the State* argued for its inclusion in the jury charge over defense objection, and then *the State* turned around on appeal and claimed that it did not matter the charge was erroneous because Rodriguez was not entitled to self-defense.

## II. Factual and Legal Background

Rodriguez relies upon the unanimous appeals court's recitation of the facts, and additional facts will be cited to the extent relevant to support the appeals court. *See Rodriguez v. State*, 01-12-00688-CR, 2014 WL 7205226, at 1-7 (Tex. App.—Houston [1st Dist.] Dec. 18, 2014) (*pet. Filed*).

Petitioner concedes on appeal that the jury charge was erroneous but claims it had no effect on the jury. *See* State's Pet. at 4-7. As the appeals court explained, though, the jury charge error affected the "*very basis*" of Rodriguez's self-defense claim. *Rodriguez,* 2014 WL 7205226, at 15. The instruction submitted to the jury was reproduced in the opinion. *Id.* at 8-9.

This erroneous instruction did not just have some minor problems; it had absolutely *no basis* in law. The State-requested instruction replaced page 11 of the court's original proposed jury instructions that properly explained the law under Texas Penal Code sections 9.31 and 9.32. 9 Ct.R. at 110; 29 Ct.R. at 3; Ct. Ex. 1 at 11. [1]

The inclusion of this incorrect charge was the State and trial court's apparent attempt to address self-defense when a Concealed Handgun License (CHL) is involved. 5 Ct.R. at 59, 156-57; 18 Ct.R. 10-21 (printout of Rodriguez's CHL

---

[1] Section 9.31 applies to self-defense generally. Section 9.32 applies to deadly force in self-defense.

license and application). Section 46.02 does not apply to a person who "is carrying a concealed handgun and a valid [concealed carry] license." Texas Penal Code § 46.15. This means that Rodriguez was entitled to act in self-defense, even if he carried a weapon outside of his property, so long as he complied with this statute.[2]

This is far from what the jury was instructed, as Petitioner concedes. The first paragraph of the excerpted charge almost tracks Texas law, but it did not include the language from section 46.02 concerning being "on the person's own premises or premises under the person's control."  Further, and much more damning, the end of the first paragraph ended with "in violation of the law," which jurors must have read to refer to the second and third paragraphs where the law ("a person commits an offense . . . ") is stated.

The second and third paragraphs refer to the law regarding the offense of unlawful carrying of a handgun by a license holder. Under section 46.035, a license holder commits an offense if he "intentionally fails to conceal the

---

[2] Rodriguez believes it is unclear that section 46.15 requires a CHL holder to actually possess his license in order to rely on self-defense. If this were the plain meaning, it would lead to an absurd result. *Boykin v. State* , 818 S.W.2d 782, 785 (Tex. Crim. App. 1991) ("There is, of course, a legitimate exception to this plain meaning rule: where application of a statute's plain language would lead to absurd consequences that the Legislature could not possibly have intended, we should not apply the language literally.")  Surely the Legislature did not intend to limit the right of CHL holders to protect themselves based on whether they possessed their actual license on their person at the time. This would mean that a person could defend themselves outside of his property if they had his license on them, but could not, for example, if the license was sitting a few hundred feet away in his home, car, or office.

3

handgun," or if "the person carried a handgun and was intoxicated." *Id.* at § 46.035(a), (c); Cl.R.at 2368. Section 46.035 had nothing to do with a proper jury instruction under section 9.31(b)(5)(A).

Unlike the first paragraph in the jury charge, which stated the use of force was not justified if the defendant "was failing" to conceal the handgun while he sought an explanation, the second paragraph stated a defendant committed an offense if "he failed" to conceal the handgun, without any mention of the required nexus to the defendant seeking an explanation of his differences. Also, the second paragraph failed to reference the absolute defense to section 46.02 if one meets the requirements of Section 46.15(b)(6).

The third paragraph, dealing with intoxication, has no place in a self-defense instruction, as intoxication does not preclude one from relying on self-defense.

The final application paragraph, rather than instruct the jury that self-defense did not apply if the defendant sought an explanation from the other person *while* he was violating section 46.02, instructed the jury that if the defendant violated "the law stated above, *before* seeking an explanation from or discussion with the other person . . . then you will find against the defendant on the issue of self-defense." Cl.R.at 2368 (emphasis added). This application paragraph instructed the jury what "you will find" if conditions precedent are met.

As the Court of Appeals found, this unlawful jury charge harmed Rodriguez because: (1) the prosecution introduced evidence, over objection, that he was taking multiple psychiatric and pain medications on the night in question (which the jury asked about in a note during their deliberations), *Rodriguez,* 2014 WL 7205226, at 14; 4 Ct.R. at 210-212, (2) the prosecution specifically argued to the jury that his gun was not concealed and misstated the law regarding self-defense, *Rodriguez,* 2014 WL 7205226, at 13, and (3) the jury focused on the question of whether Rodriguez's gun was concealed, even asking the trial court if a holster had been "taken into evidence." *Id.* The evidence shows that the jury evaluated, and possibly relied upon, the unlawful instruction denying Rodriguez his only avenue of defense—self-defense. The appeals court correctly held that "all of the *Almanza* factors point toward the conclusion that the charge errors harmed Rodriguez." *Id.* at 14.

**A. Petitioner's first ground seeks to change this Court's error preservation jurisprudence and misstates the appeals court's holding on this issue.**

Petitioner claims that the Rodriguez opinion, if not reversed, "will encourage parties to sandbag trial courts by raising vague objections but precise appellate complaints." *See* State's Pet. at 8. No legal authority is cited to support this proposition, perhaps because it does not make much sense. Defense counsel, recognizing a jury charge error will affect the very core of the defense, will not

5

intentionally vaguely object to that error and risk losing the more favorable "some harm" standard of harm on appeal. Further, if anything would encourage sandbagging, it would be putting the appellate imprimatur on what the State did in Rodriguez's case. While the defense made a lengthy objection to the jury charge at trial, it was the State that submitted, it was the State that argued for the incorrect charge, and it was the State that for the first time on appeal claimed Rodriguez was not entitled to self-defense as a matter of law. *Rodriguez,* 2014 WL 7205226, at 14 (noting that the State raised this claim for the first time on appeal).

Petitioner incorrectly claims the appeals court misread the record regarding the preservation issue. *See* State's Pet. at 10. After finding error in the jury charge, the appeals court continued to apply the *Almanza* framework by considering whether charge error was preserved. *Rodriguez,* 2014 WL 7205226, at 10-11. The appeals court quoted at length from the record. *Id.* After noting that the State and trial court understood the nature of the objection, the appeals court explained that "[a]lthough Rodriguez did not parse the instruction and detail each of the errors in it, we conclude that his objection was sufficient to preserve the error he complains of on appeal." *Id.* (*citing Clark v. State*, 365 S.W.3d 333, 339 (Tex. Crim. App. 2012); *Lankston*, 827 S.W.2d at 909; *State v. Rosseau*, 396 S.W.3d 550, 555 (Tex. Crim. App. 2013).

The Court's ruling was no doubt correct. As the appeals court noted, the defense argued the instruction permitted the jury to reject Rodriguez's self-defense claim based on testimony regarding his failure to conceal his guns earlier in the night. *Rodriguez,* 2014 WL 7205226 at 11. The prosecution incorrectly responded that the charge "tracks the statute" because there was "some evidence that . . . the defendant [had] a concealed handgun license." 9 Ct.R. 113. This response shows the prosecution understood the nature of the objection. The prosecution stated the charge had a legal basis, and that the evidence, including that from Fornols, required the submission of the charge to the jury. 9 Ct.R. at 112. The trial court understood the objection.[3] *Id.* at 112-13.

In an attempt to to twist the appeals court's finding on this issue, Petitioner claims the appeals court "said that the appellant's invocation of Fornols' testimony apprised the trial court of the incorrect tense in the fifth paragraph of the erroneous charge." *See* State's Pet. at 10. This is simply a misunderstanding of Rodriguez's argument "that the instructions would allow the jury to incorrectly reject his claim of self-defense based on testimony regarding his alleged failure to conceal during his visit to Fornols's house at 8:30 p.m." *Rodriguez,* 2014 WL 7205226, at 11.

---

[3] Even if an objection is imperfect, it is "sufficient to preserve error if the record indicates that the trial judge understood the appellant's request to encompass the matters about which the appellant now complains." *Bennett v. State ,* 235 S.W.3d 241, 243 (Tex. Crim. App. 2007)

Petitioner takes aim at this Court's well-established jurisprudence directing that error preservation "is not an inflexible concept." *Thomas v. State,* 408 S.W.3d 877, 884 (Tex. Crim. App. 2013). Petitioner does not believe that "all a party has to do to avoid the forfeiture of a complaint on appeal is to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him at a time when the trial court is in a proper position to do something about it." *Id.* (citation omitted). Instead, Petitioner falsely contends a party must *parse jury instructions and detail all errors* in them exactly as they do on appeal. *See* State's Pet. at 11-12.

In support, Petitioner cites *Taylor v. State*, 769 S.W.2d 232 (Tex. Crim. App. 1989). But in *Taylor*, this Court reversed the appeals court because the defendant had preserved jury charge error (and he preserved it on a more vague objection than Rodriguez). *Taylor,* 769 S.W.2d at 233. *Taylor* actually supports that Rodriguez preserved error because he pointed out the specific portion of the charge in error (the discussing-the-differences portion), and he explained what was wrong with the charge.

But even if Rodriguez had not properly preserved error, the outcome of his appeal would clearly be the same. Had the appeals court found the error was not preserved, the standard of harm would be "egregious harm." *See Heins v. State,* 157 S.W.3d 457 (Tex.App.-Houston[14th Dist.]2004) (egregious harm resulted

8

when the trial court failed to include the language of "premises under the person's control" in the exception to seeking-an-explanation in a self-defense case, since "both the basis of the case and the main defensive theory, that is, whether appellant murdered her husband or shot him in self-defense, were affected by this error.").

In Rodriguez's case, the jury charge error affected both the basis of the case and the sole defense. Indeed, the appeals court specifically explained that the error in this case affected "*the very basis of the case.*" *Rodriguez,* 2014 WL 7205226, at 15 (*citing Almanza,* 686 S.W.2d at 172) (*emphasis added*). The "very basis of the case" language from *Almanza* is one of the tests this Court has adopted for addressing egregious harm. *Almanza,* 686 S.W.2d at 172. In using this language, the *Rodriguez* opinion clearly indicated that egregious harm resulted from the State's unlawful jury instruction.

Discretionary review should therefore be denied on this ground.

**B. Petitioner's second ground is incorrectly premised on the appeals court not conducting a harm analysis.**

Petitioner incorrectly claims the appeals court found the unlawful jury instruction harmful solely because it was confusing. *See* State's Pet. at 12-16 (claiming the appeals court misapplied *Reeves v. State*, 420 S.W.3d 812 (Tex. Crim. App. 2013)). But the appeals court performed the detailed harm analysis

that this Court established in *Almanza. See Rodriguez*, 2014 WL 7205226, at 12-14.

To begin its analysis the Court of Appeals first explained the four factors relevant to the harm analysis: "(1) the entire jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record of the trial as a whole." *See Almanza*, 686 S.W.2d at 171.

Petitioner's complaint addresses the appeals court's analysis as it relates only to the first *Almanza* factor. Regarding that factor, the appeals court addressed Petitioner's contention that the unlawful charge somehow benefitted Rodriguez by requiring the jury to find that he was both intoxicated and failing to conceal his gun before the jury could rule against him on self-defense. *Rodriguez*, 2014 WL 7205226, at 12; State's Reply at 15-16.

The appeals court's reliance on this Court's recent case law is understandable. *Reeves* involved the analysis of harm related to an improper provocation instruction in a murder trial (also in Harris County). *Reeves v. State*, 420 S.W.3d at 812. This Court explained that while the Harris County self-defense instruction was accurate, it was also "cumbersome (even obtuse)." *Id.* at 817. The Court specifically pointed out "[t]he self-defense application paragraph is a single sentence that contains 204 words" (similar to Rodriguez's charge). *Id.* at n. 29.

10

Immediately after the self-defense section, a provocation charge was improperly included. *Id.* 3.

In discussing harm, this Court explained that the provocation instruction was clearer than the meandering self-defense instruction. *Id.* at 819. This "highlighted an element of self-defense that was not factually contested at trial." *Id.* Further, the presence of the improper instruction "implied that there was some evidence to support every element of the provocation doctrine when there was not." *Id.* Finally, the location of the charge, found immediately after the confusing self-defense instruction made it more likely the jury's attention was drawn to the improper charge. *Id.*

The same reasoning applies in Rodriguez's case. His instructions included a four-page self-defense instruction that had an application paragraph spanning more than 200 words, but the erroneous charge immediately following that instruction was simple and concise. Cl.R. at 2363- 2368. The jury's attention would be drawn to the erroneous charge at issue in his appeal, which allowed the jury to reject self-defense without even considering the merits of his use of force. *Id.*

This Court in *Reeves,* after discussing the charge, found the first factor in the *Almanza* analysis weighed in favor of finding harm, just as the appeals court did in

Rodriguez's case. However, Petitioner attempts to morph this finding on the first *Almanza* factor in the Rodriguez opinion into a finding on the *entire Almanza analysis.*

Petitioner ignores that the appeals court proceeded to specifically address the remaining factors in detail. The appeals court moved on to the evidence presented at trial. It noted that the only question for the jury was the validity of Rodriguez's self-defense claim. *Rodriguez*, 2014 WL 7205226, at 12. The appeals court explained the prosecution had claimed that Rodriguez had manufactured his self-defense claim. However, the appeals court also recognized (which Petitioner refuses to do) that ample evidence showed Rodriguez might have lawfully been relying on self-defense. *Id.* The appeals court held that "given the conflicting evidence, we conclude that conviction was not a foregone conclusion absent the charge error, and that this factor supports reversal." *Id.* at 13. The appeals court essentially found that where evidence supports both a valid self-defense defense and a rejection of that defense, the jury should be given a lawful instruction so that the jurors can decide the facts based upon a *correct* statement of law.

Conveniently, Petitioner also omits the appeals court's discussion of the prosecution's argument. *Id.* at 13. Regarding the prosecution's initial closing statement, the appeals court found "[t]he State thus advanced an incorrect, or at

least incomplete, argument regarding the limitations on Rodriguez's claim of self-defense." After discussing the defense's straightforward argument, the appeals court once again addressed the propriety of the State's rebuttal closing argument: "In short, the State, in closing, misstated the law regarding the qualification on self-defense and highlighted the issue of the handgun's concealment, which was erroneously addressed in the charge." *Id.* Based on the State's incorrect legal argument and reliance on the improper jury charge, the appeals court found the "third factor thus weighs in favor of finding some harm."

The appeals court performed the final step in the *Almanza* harm analysis by looking at other information in the record. *Id.* at 13-14. The appeals court correctly focused on jury notes, which were sent during deliberations, that suggested the jurors were focusing on the two issues raised by the unlawful jury charge: concealment of the handgun and Rodriguez's possible intoxication. *Id.* The appeals court properly found that the "two jury questions also weigh in favor of finding some harm." *Id.*

Discretionary review should therefore be denied on this ground.

**C. Petitioner's third ground ignores facts presented at trial, misstates the holding of the appeals court, and fails to recognize the role of estoppel in Texas' jurisprudence.**

In its third and final ground of relief, Petitioner contends the appeals court erred in holding the State was estopped from arguing Rodriguez was not even entitled to a self-defense jury charge in the first place.

At the outset, it is important to point out that the appeals court's holding regarding the State's argument that Rodriguez was not entitled to self-defense as matter law *is not based solely on the principles of estoppel.* Indeed, the appeals court specifically explained that the State failed to prove as a matter of law that Rodriguez was not entitled to self-defense. *Rodriguez*, 2014 WL 7205226, at 14 n. 6.

The State bases its argument on two cases: *Davis v. State*, 276 S.W.3d 491 (Tex. App.–Waco 2008, pet. ref'd.), and *Williams v. State*, 35 S.W.3d 783 (Tex. App.–Beaumont 2001, pet. ref'd.). *Id.* These cases have nothing to do with harm analysis; instead, in both cases the defendant was denied a self-defense instruction, and the appellate courts upheld that denial because the evidence presented at trial proved as a matter of law that the defendants were not entitled to self-defense. *Williams,* 35 S.W.3d at 785-87; *Davis,* 276 S.W.3d at 498-99.

Petitioner's argument is that self-defense is limited when a person violates section 46.02 while attempting to discuss their differences with another. However, "[s]ection 46.02 does not apply to a person who is carrying a concealed handgun and a valid [CHL]." TEX. PENAL CODE § 46.15. Petitioner continues to argue

that no self-defense instruction should have been given because the defense never affirmatively established that Rodriguez had his license on his person.[4] *See* State's Pet. at 16-18.

Amazingly, Petitioner continues to claim that the only witness who discussed whether Rodriguez's gun was concealed during the relevant time frame was Stetson, and that there was "no evidence whatsoever as to whether the appellant carried his CHL." *Id.* at 17. The State continues to ignore that Stetson himself agreed at trial that the first time he saw Rodriguez's weapon was when he pulled it out and "showed it to us." 6 Ct.R. at 80-82; Rodriguez's Amended Brief at 36. The logical inference from this testimony is that Rodriguez had his gun concealed. This contradicted Stetson's prior trial testimony that Rodriguez's gun was not initially concealed. 6 Ct.R. at 80-82 .

The State also continues to ignore that its own witnesses (such as James Tyler and James Storm) testified they had not seen the gun on Rodriguez. *See* Rodriguez's Amended Brief at 36; 5 Ct.R. at 253; 6 Ct.R. at 167-68; 7 Ct.R. at 145. Ample evidence raised a fact issue of whether Rodriguez's gun was concealed at the time he sought an explanation from the partiers.

---

[4] Rodriguez disputes the state's interpretation of the interplay between Texas Penal Code §§ 46.02 and 46.15.

Second, the State claims "no evidence" existed that Rodriguez had a CHL. *See* State's Pet. at 17. However, evidence existed that he could have possessed his CHL at the time of the shooting. It is undisputed that Rodriguez was a CHL holder. 18 Ct.R. at 10-21. Detective Brown testified that he was aware of the license, although he did not recall seeing the actual hard copy. 5 Ct.R. at 157. He testified he *could not recall* seeing the actual hard copy—not that he *did not* see a hard copy-at the scene. *Id.* This evidence created a fact issue of whether Rodriguez had his CHL license on his person at the time of the shooting. The appeals court even pointed out that *the State conducted itself throughout trial as if the CHL exception applied to Rodriguez. Rodriguez,* 2014 WL 7205226 at 14.

These facts, and the fact Rodriguez was licensed to carry a concealed handgun, distinguishes his case from those that Petitioner cites. Both *Davis* and *Williams* involved uncontradicted, unequivocal, and clear evidence that the defendants sought out an explanation of their differences with another while violating section 46.02. Neither case involved a defendant who was a CHL holder. Neither case applies to Rodriguez because the evidence in his case created a fact issue of whether the limitation on self-defense applied. For these reasons, the appeals alternative holding—that the prosecution failed to show as a matter of law

16

that Rodriguez was not entitled to a self-defense instruction—is sufficient to support the appeals court's holding.

But the Court of Appeals went beyond merely relying on the holding above in denying the Petitioner's claim. The Court held that because the State introduced Rodriguez's CHL records and emphasized the fact he held the license, adduced evidence regarding whether his gun was concealed, and "conducted itself as if it agreed a [§ 46.15] fact issue had been raised," Petitioner was estopped from arguing otherwise on appeal. *Rodriguez*, 2014 WL 7205226, at 14.

Principles of estoppel, waiver, and due process clearly apply to bar the State on appeal from arguing that Rodriguez was not entitled to a correct jury instruction. *See New Hampshire v. Maine*, 532 U.S. 742, 749–51 (2001) (equitable rule of judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase); *Wooley v. State*, 273 S.W.3d 260 (Tex. Crim. App. 2008) (due process prevents appellate court from affirming a conviction based upon legal and factual grounds that were not submitted to the jury).

Texas' courts, including this Court, have long relied upon the principles of estoppel to prevent parties from doing what Petitioner has sought to do on appeal:

17

complaining about a matter that Petitioner *requested and argued for* at trial. In *Prystash v. State*, this Court explained the law of invited error:

> Waiver might usefully be distinguished from what is sometimes called "invited error." If a party affirmatively seeks action by the trial court, that party cannot later contend that the action was error. This is not really a waiver of error previously committed. Rather, it is part of the definition of what can constitute error, and quite reasonably defines error of which a party may complain as excluding those actions of the trial court actually sought by the party in that tribunal.

3 S.W.3d 522, 531 (Tex. Crim. App. 1999) (*citing* George E. Dix and Robert O. Dawson, 43 Texas Practice—Criminal Practice and Procedure § 42.141 (Supp.1999)). Further, the principle of estoppel has specifically been applied against the State in the position of appellee. *See e.g. Cuellar v. State*, 957 S.W.2d 134, 137 (Tex. App.—Corpus Christi 1997, pet. ref'd.) (holding the State was estopped from arguing the impropriety of a motion to quash when the State had stipulated to the facts and the hearing at the trial court); *Janecka v. State*, 823 S.W.2d 232 (Tex. Crim. App. 1990). There is simply nothing novel or far-reaching about the appeals court's use of well-settled estoppel principles in Rodriguez's case.

Discretionary review should therefore be denied on this ground.

### III. Conclusion

Rodriguez therefore respectfully requests that this Court deny discretionary review.

Respectfully submitted,

STRADLEY, DAVIS & REYNAL  LLP


___/s/__Neal Davis_____
Neal Davis
State Bar No. 24001117

Bill Stradley
State Bar No. 19353100

Jonathan Landers
State Bar No. 24070101

917 Franklin Street, Suite 600
Houston, Texas 77002

Telephone:   (713) 227-4444
Facsimile:    (800) 760-7140
Email: NDavis@SDRFirm.com

RODRIGUEZ'S ATTORNEYS

**CERTIFICATE OF COMPLIANCE AND SERVICE**

I certify that, according to Microsoft Word's word-counting function, the portion of this brief for which Texas Rule of Appellate Procedure 9.4(i)(1) requires a word count contains 4,229 words.

I also cetify that I have requested that efile.txcourts.gov electronically serve a copy of this brief to Harrist County Assistant District Attorney Clinton A. Morgan at 1201 Franklin, Suite 600, Houston, Texas 77002-1923, and on the State Prosecuting Attorney of Texas at P.O. Box 13046, Austin, Texas 78711-3046, and have mailed this brief to them as well.

Signed February 19, 2015.

___/s/____Neal Davis_____
Neal Davis